### 𝕽𝕚𝕔𝕙𝕞𝕠𝕟𝕕.

## G. OBER & SONS COMPANY, INC. V. WM. G. SMITH, INC.

### January 24, 1918.

1. APPEAL AND ERROR—*Commissioner's Report—Exceptions.*—Where on the face of the report of a commissioner no error is apparent, and no exception thereto was taken by appellant in the court below, it is too late to raise the objection on appeal. The evidence in the cause cannot be looked to by the appellate court to ascertain whether the commissioner's conclusions were sustained or not sustained by the evidence. The conclusion of the commissioner and the adjudication of the court below based thereon are final and conclusive upon the appellant and are not open to review in the appellate court.

2. PRINCIPAL AND AGENT—*Commissions.*—A contract of agency provided that the compensation of the agent of a manufacturer of fertilizer should be $2.00 per ton on all sales of fertilizer by him, with additional compensation of a bonus of $500.00 when the agent should sell, collect and settle with the manufacturer for as much as 1,000 tons of the fertilizer. The agent was to endorse notes of farmers taken for all sales of fertilizer on time. The manufacturer became entitled to the custody and control of the notes under the provisions of the contract, because the agent, without the consent of the manufacturer, ceased to pay any attention to the business of the agency and accepted other employment in another State.

   *Held:* That, the withdrawal of the notes by the manufacturer and the undertaking of the collection of them by him to the exclusion of the agent, was not a breach of the contract on the part of the manufacturer.

3. PRINCIPAL AND AGENT—*Commissions.*—A contract of agency provided that the compensation of the agent of a manufacturer of fertilizer should be $2.00 per ton on all sales of fertilizer by him, with an additional compensation of a bonus of $500.00 when the agent should sell, collect and settle with the manufacturer for as much as 1,000 tons of the fertilizer. The agent sold more than 1,000 tons of fertilizer but did not collect for 1,000 tons. Further, the agent breached his contract

with the manufacturer by accepting employment in another State and giving no further attention to the business of the agency or the collections.

*Held:* That, this breach of contract by the agent abrogated the promise in respect to the bonus.

Appeal from a decree of the Circuit Court of Northampton county. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Jno. T. Daniel, Jas. E. Heath* and *J. Warren Topping,* for the appellant.

*Otho F. Mears,* for the appellee.

SIMS, J., delivered the opinion of the court.

The decree complained of by appellant and upon which cross-errors are assigned by appellee was based upon three master commissioners' reports, made by the same commissioner on successive recommittals to him of the cause and his reports as first made, to none of which report was any exception taken by the appellant. To the commissioner's reports first filed the appellee took exceptions, raising the questions arising upon said cross-assignments of error.

This condition of the record renders it unnecessary for us to state in detail the facts of the case bearing on the appellant's assignment of error. And in the view we take of it, the following outline of the facts and statement of the questions raised on appeal by appellants and by the appellees will be sufficient.

The appellant is a manufacturer of fertilizer and the appellee (as-it must be taken to be upon the issues made in the cause before us) was appellant's agent for its sale. The

contract of agency provided that the compensation of appellee should be $2.00 per ton on all sales of fertilizer by him, the proceeds of sale of which should be collected by appellee or appellant and received by appellant, and an additional compensation of a "bonus" of $500.00 if and when the appellee should sell, collect and settle with appellant for as much as 1,000 tons of the fertilizer.

The appellee, in accordance with the contract, was to endorse farmers' notes taken for all sales of fertilizer on time, thereby making itself liable thereon to appellant as surety for the payment of such notes. Accordingly, appellee endorsed all of such notes, so taken, aggregating quite a large amount; the particular notes on which appellee was relieved from liability by the decree complained of aggregated, however, only $2,190.85; and under such contract appellee gave a bond to appellants, with Wm G. Smith and Mrs. Nannie V. Smith as sureties, covering the amount of certain prices of all fertilizer shipped to appellee, conditioned for the faithful performance of the duties of the latter as agent, etc.

The appellant was entitled to the custody and control, under the provisions of the contract aforesaid, of the farmers' notes aforesaid which were uncollected on October 6, 1910, because the appellee then, without the consent of appellant, ceased all attention to the business of said agency and accepted other employment in the State of Florida from that date until the latter part of May, 1911. Further—

At the time of such breach of contract by appellee, although 1,176-1/6 tons of fertilizer had been sold by appellee, as much as 1,000 tons had not been collected for by it, or by it and appellant.

The decree complained of contains the following adjudications, which are drawn in question, namely:

(a) It confirmed the last report of the commissioner aforesaid (which was the final result of his several reports), and decreed that the appellee pay over unto the appellant the sum of $1,313.23, with interest thereon at the legal rate from July 15, 1910, "the same being the amount found due the said plaintiff (appellant) by the said defendant (appellee) after allowance of all proper credits."

(b) It further decreed that the appellee be "absolved and released * * * from further liability * * * as endorser" on said notes; and that upon the payment by appellee to appellant of said sum of $1,313.23, with interest as aforesaid, "both the said defendant (appellee) and its surety upon a certain bond herein filed" (being the bond above mentioned) "shall be absolved and released."

Appellant complains of the provisions of said decree referred to in sub-paragraph (b) next above, and urges that the evidence returned with said commissioner's reports is insufficient to sustain the decree in this particular, in that it does not show such laches or other conduct on the part of appellant as would release the appellee from his liability as endorser aforesaid. This is the sole assignment of error by appellant. We will first consider this assignment of error.

1. Whether there was such conduct amounting to such failure on the part of the appellant to perform its duties under said contract as in equity relieved the appellee as endorser of said notes from liability to the appellant (plaintiff in the court below), on the principle that he who asks equity must do equity, depended upon the conduct of the appellant as shown by the evidence before the commissioner.

In his first report the commissioner reached the conclusion from the evidence before him that the appellee was "not liable in any way (as endorser or otherwise) to the plaintiff (appellant) on account of said notes" and so reported. As above stated, there was no exception to that

report by the appellant, nor to any of the said commissioner's reports. Under the well-settled rule on the subject, the evidence in the cause cannot be looked to by us to ascertain whether the conclusion aforesaid of the commissioner was sustained or not sustained by the evidence. On the face of the reports aforesaid no error is apparent in such conclusion. No exception having been taken by appellant in the court below, as aforesaid, it is too late for it to raise the objection in this court on appeal. *Morrison* v. *Householder*, 79 Va. 627; *Hansucker* v. *Walker*, 76 Va.. 753; *White's Ex'r* v. *Johnson*, 2 Munf. (16 Va.) 285. The conclusion of the commissioner and the adjudication of the court, by the decree complained of based thereon, aforesaid, were, therefore, final and conclusive upon appellant and are not open to review in this court. Hence, we cannot sustain the assignment of error of appellant.

The cross-assignments of error of appellee involve two questions only, which will be considered in their order as stated below, which were raised by exceptions by appellee to the two commissioner's reports aforesaid first filed.

2. Were the commissioner's reports and the decree aforesaid thereon correct in allowing the appellee its compensation of $2.00 per ton only on the proceeds of fertilizer sales collected by appellee and appellant and received by appellant and not on the gross sales by appellee?

The commissioner reports sales by appellee of 1,177-1/6 tons of fertilizer and allowed appellee his compensation above mentioned of $2.00 per ton on all proceeds of such sales which were collected by appellant and appellee and received by appellant and which will be received when appellee shall have paid to appellant the $1,313.23 balance due to the latter above mentioned. The decree complained of by appellee made the same allowance. Appellee claims, however, that it should have been allowed said $2.00 per ton on all of its sales of 1,177-1/6 tons of fertilizer, regardless of

the fact that some of the farmers' notes therefor were never collected. Appellee makes this claim on the ground that appellant withdrew certain of the farmers' notes, among which were those uncollected, from the hands of appellee and also otherwise prevented appellee from collecting such notes, by placing them in the hands of an attorney for appellant and notifying the farmers to pay the notes only to such attorney or to appellant direct; and appellee contends that this was a breach of contract by appellant and that but for such breach of contract by appellant appellee would have collected approximately (*sic*) all of such notes. As above noted, one of the facts in the case is that under the provisions of the contract aforesaid the appellant was entitled to the custody and control of the farmers' notes aforesaid, which were uncollected on October 6, 1910, because the appellee, without the consent of the appellant, then ceased all attention to the business of said agency and accepted other employment in the State of Florida from that date until the latter part of the next May, which was a breach of said contract by appellee. This fact is decisive of the question under consideration, and necessarily leads to the conclusion that the withdrawal of said notes aforesaid and the undertaking by appellant of the collection of such notes to the subsequent exclusion of the appellee in the matter after May, 1911, was not a breach of said contract on the part of appellant. Hence, there was no error in the commissioner's report, or in the decree complained of, on the point in question.

3. Were the commissioner's reports and the decree complained of thereon correct in failing to allow the appellee the $500 bonus aforesaid?

By the terms of the contract aforesaid, as shown by the evidence in this cause, the bonus in question was not agreed to be paid unless and until the appellee should sell, collect and settle with appellant for as much as 1,000 tons of fer-

tilizer. Further, as above noted, there was a breach of said contract by the appellee on October 6, 1910, and at that time, while 1,177-1/6 tons of fertilizer had been sold by appellee, as much as 1,000 tons had not been "collected for." Under the provisions of the contract, appellant had the option to avail itself of the personal services of appellee in the collection of said notes. This was a material part of the consideration for the promise of appellant to pay said bonus. That it was material is admitted by appellee by its contention that its services, even after May, 1911, were valuable to appellant and would have been effective to the extent of collecting approximately all of the unpaid farmers' notes, if it had been permitted, after its said breach of contract, to undertake that task. And the promise by appellant, aforesaid, was indeed expressly conditioned, not only upon the sale, but the collection *by appellee* of the proceeds of sales of as much as 1,000 tons of fertilizer, which was in fact the condition that appellee should give its personal attention to the collection of the proceeds of that amount of such sales. Hence, the breach by appellee of the contract, in the particular aforesaid, abrogated the promise aforesaid in respect to said bonus. Therefore, there was no error in the commissioner's report, or in the decree complained of, because of the failure to allow appellee said bonus.

For the foregoing reasons, we are of opinion to affirm the decree complained of, both as to the assignment of error by the appellant and the cross-assignments of error by the appellee.

*Affirmed.*